**SIGNED this 28 day of July, 2014.**



**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| PMF ENTERPRISES, INC., | : | |
|           Debtor | : | Case No. 10-50309-JPS |
| | : | |
| PMF ENTERPRISES, INC., | : | |
|           Debtor | : | |
| | : | |
| vs. | : | |
| | : | |
| SOUTHCREST BANK, | : | |
|           Creditor | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCES:

    For Debtor:               Wesley J. Boyer
                                    Katz, Flatau, Popson and Boyer, LLP
                                    355 Cotton Avenue
                                    Macon, GA 31201

    For SouthCrest Bank:      R. Brian Wooldridge
                                    P. O. Box 310
                                    Newnan, GA 30264-0310

## MEMORANDUM OPINION

PMF Enterprises, Inc. ("PMF") and KPB Enterprises, LLC ("KPB") were related entities operating a convenience store in Perry, Georgia. This matter arises from the objection by PMF to the claim of SouthCrest Bank, as successor in interest to Century Security Bank ("SouthCrest"). As will be explained below, SouthCrest had no privity of contract with PMF, and the debtor with whom it did have privity, KPB, essentially had no assets. Accordingly, at the conclusion of the September 10, 2013, hearing[1] on the claim objection, the Court deferred its ruling until the resolution of the Chapter 7 trustee's[2] motion to substantively consolidate the cases of PMF and KPB. After the January 15, 2014, hearing on consolidation[3], the Court granted the trustee's motion and substantively consolidated the cases. Therefore, the claim objection is now ripe for determination. Having considered the evidence, the parties' briefs and the relevant law, the Court now publishes its findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

Some time prior to August 30, 2007, Pierre Beauchamps[4] ("Beauchamps") formed

---

[1] The transcript of the hearing erroneously states the date of the hearing to be September 20, 2013.

[2] Walter W. Kelley serves as Chapter 7 Trustee in both the PMF and KBP cases.

[3] The parties have stipulated that the evidence introduced at the January 2014 hearing on consolidation may be considered in determining the claim objection.

[4] Throughout the filings and exhibits introduced in this case, this individual's name is alternatively spelled with and without the "s" at the end of the name. Having no definitive guidance as to which is correct, the Court has chosen to use the version with the "s".

KPB, of which he is the sole member and manager. On August 30, 2007, KPB borrowed $1,960,000 from Century Security Bank ("Century") to purchase a convenience store and gas station. To secure the loan, KPB gave Century a security deed on the real property and a security agreement on inventory and other related personality. Beauchamps personally guaranteed the loan.

Shortly thereafter, Beauchamps formed PMF (of which he is the sole shareholder) to operate the convenience store. Beauchamps subsequently obtained commercial liability and property insurance from Catawba Insurance Company ("Catawba") in the name of "PMF Enterprises, Inc. d/b/a Superfood Mart".[5] Thereafter, and notwithstanding the fact that Century's loan was to KPB, Century was added to the PMF-Catawba policy as a lien holder. The policy included limits of $400,000 for building coverage, $1,160,000 for fuel pumps and tanks, $280,000 for personal property/contents coverage and additional coverage for debris removal and business income.

A fire occurred at the store on November 28, 2008, causing substantial damage to the building, pumps and contents. Catawba paid PMF and Century, jointly, $400,000, representing the policy limit on the property damage to the building. Catawba also paid Century $76,526.93 under the fuel pumps and tanks coverage. However, Catawba refused to pay any further claims. Century applied a portion of the insurance payment to monthly installments due under the note from KPB and the balance was paid to BGN

---

[5] Notwithstanding the fact that the real property and building were owned by KPB, Beauchamps did not obtain insurance in the name of KPB, nor did he disclose the existence of KPB and its ownership of the real property to Catawba.

Restoration, LLC, which Beauchamps had hired to restore the building.[6]  No further payments were made on the note by either PMF or KPB.  Accordingly, the note went into default.  In addition, the insurance proceeds were insufficient to cover the entire cost of restoration.  Accordingly, BGN ceased work on the restoration when it could not get paid.

Subsequently, in November 2009, PMF filed suit against Catawba in the State Court of Fulton County, Georgia ("The Fulton County Suit") seeking to recover amounts it claimed were owed under the insurance policy.  PMF's complaint alleged, inter alia, that Catawba breached the insurance policy by failing to pay PMF its continuing operating expenses, which PMF contended included the monthly note payments owed by KPB to Century.  PMF alleged that this had caused the mortgage to go into default and that, therefore, as consequential damages, Catawba owed PMF the entire amount due under the Century note.[7]

On February 1, 2010, KPB and PMF each filed voluntary Chapter 7 petitions.  On March 31, 2010, SouthCrest (which was by then the holder of the Century claim against KPB) filed its motion for relief in the KPB case asking to foreclose on the real property on which the convenience store had been operating.  An order granting relief was entered on April 28, 2010.  Thereafter, SouthCrest foreclosed and confirmed the sale in state

---

[6] Continuing to ignore the distinction between KPB, the owner of the premises, and PMF, the operator, Beauchamps caused the contract with BGN to be entered into by PMF.

[7] Beauchamps was also a plaintiff in the law suit and sought the same damages, alleging that he was a third party beneficiary under the insurance policy.  His claim was dismissed on summary judgment by the Fulton County State Court.  The trial court also ruled on summary judgment that Catawba had waived its incendiarism defense because it tendered payments under the policy without raising the issue of arson as a potential defense to coverage.

court.

On July 2, 2010, the trustee filed in the PMF case an application to employ the firm of Bullard & Wangerin, LLP to prosecute the PMF claim pending in the Fulton County Suit[8]. An order appointing that firm was entered on July 6, 2010.

On May 24, 2011, SouthCrest filed its own suit against Catawba in the State Court of Gwinnett County, Georgia ("Gwinnett County Suit") seeking amounts it claimed were due under the insurance policy. SouthCrest's complaint against Catawba sought damages, including $927,949.80, described in the complaint as "the deficiency owed to Plaintiff on its mortgage on the property".[9]

On March 16, 2012, SouthCrest and Catawba executed a "RELEASE OF ALL CLAIMS AND SETTLEMENT AGREEMENT" (the "SouthCrest Settlement") pursuant to which they settled the Gwinnett County Suit. Paragraph 9 provides, in part:

> SouthCrest accepts Catawba's payment of $150,000, made pursuant to the mortgagee clause of the policy of insurance Catawba Insurance Company issued...as full payment and satisfaction of SouthCrest's claim pursuant to the mortgagee clause, including, but not limited to, the mortgage debt, for the $927,949.50 owed to SouthCrest concerning the mortgage on 517 North Perry Parkway, Perry, Georgia, 31069, and including all claims for inventory and contents and personality at the premises.

Further, Paragraph 11 provides:

> Pursuant to the terms of the policy of insurance Catawba Insurance Company issued...SouthCrest shall and hereby does release and assign SouthCrest's interests in the policy of insurance to Catawba.

---

[8] Bullard and Wangerin had represented PMF prepetition and filed the Fulton County Suit against Catawba.

[9] The deficiency represents the balance owed on KPB's loan after applying the foreclosure sale proceeds.

Approximately two weeks later, the Fulton County Suit was tried before a jury. The jury returned a verdict in favor of PMF, awarding PMF $155,000 in damages for contents, $266,256 for lost net income, $22,800 for continuing operating expenses "excluding any mortgage expenses", $28,000 for debris removal, $60,000 as a bad faith penalty and $41,825.65 in attorney's fees. Although the transcript of the trial was not introduced at the September 10, 2013 claims dispute hearing, Kevin Wangerin, the attorney who tried the case for PMF's Chapter 7 estate, testified that the trial judge ruled that PMF was not obligated to make the mortgage payments because KPB owed the mortgage debt. Accordingly, the trial judge ruled that the jury could not consider the mortgage payments as part of PMF's operating expenses.[10]

On April 26, 2012, a "COMPROMISE AND SETTLEMENT AGREEMENT" (the "PMF Settlement") was entered in the Fulton County Suit by and between PMF, Beauchamps, KPB and Catawba, pursuant to which all of the claims between PMF and Catawba in the Fulton County Suit, as well as any claims which Beauchamps and KPB might have had against Catawba, were settled by Catawba paying PMF's Chapter 7 estate $550,000. The PMF Settlement referred to the SouthCrest Settlement and stated that :

---

[10] PMF's contention that the jury might have been able to consider awarding the mortgage debt but for the SouthCrest Settlement is unsupported by the evidence. Specifically, Wangerin testified:

> And ultimately when we got down to the jury, the court ruled that because the mortgage was in KPB, that PMF was not obligated to make those mortgage payments. And we were arguing that it was an obligation because we had been making them since the business opened. And the court did not allow the issue to go to a jury and it was reserved for appeal. Trial Transcript of September 10, 2013, p. 64, Case No. 10-50306 (Docket No. 88).

>Said settlement satisfied and released all claims which SouthCrest Bank had filed in the bankruptcy cases of PMF Enterprises, Inc. and KPB Enterprises, LLC. To the extent any bankruptcy claims or other interest of SouthCrest Bank were assigned to Catawba they are hereby waived and released.

On May 17, 2012, pursuant to Bankruptcy Rule 9019, the trustee filed in the PMF Chapter 7 case a motion to compromise the Fulton County Suit pursuant to the terms of the PMF Settlement. SouthCrest objected to the motion, contending that the above quoted release language in the PMF Settlement misrepresented the terms of the SouthCrest Settlement because the SouthCrest Settlement did not settle or release SouthCrest's claims against PMF or KPB. SouthCrest pointed out that PMF and KPB were not parties to the SouthCrest Settlement, and argued that they were not intended beneficiaries thereof.

The parties agreed to strike all of the above quoted release language and added the phrase "assigned or otherwise" to the paragraph on page 3 of the PMF Settlement that now reads:

>Catawba Insurance Company agrees that all claims and demands that the Company has or could have had or may have had *assigned or otherwise* against either of the Claimants, PMF Enterprises, Inc., or Pierre Beauchamps, individually, or KPB Enterprises, LLC, with respect to the herein-described dispute are satisfied, discharged, and settled by this agreement.

(Emphasis supplied). The PMF Settlement in that form was approved by order of this Court dated August 20, 2012.

SouthCrest filed in each Chapter 7 case a proof of claim asserting an unsecured claim of $927,949.80, representing the balance owed on the note from KPB after applying the proceeds from the sale of the foreclosed property. After receiving the $150,000 from

Page -8-

Catawba pursuant to the SouthCrest Settlement, SouthCrest filed amended claims for $777,949.80 in each case. Thereafter, PMF and KPB objected to the claims contending, inter alia, that the debt had been settled as part of the SouthCrest Settlement.[11]

## DISCUSSION AND ANALYSIS

PMF[12] contends that SouthCrest's claim against KPB was settled and assigned to Catawba pursuant to Paragraphs 9 and 11 of the SouthCrest Settlement. PMF further contends that this claim was then satisfied, discharged and released by Catawba pursuant to the PMF Settlement.

> A proof of claim is considered prima facie evidence of the validity and the amount of the claim, creating a presumption in favor of allowance. Fed.R.Bankr.P. 3001(f). The burden is on the objecting party to rebut this presumption by presenting "'facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim.'" Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) (quoting 3 Collier on Bankruptcy ¶ 502.02 (15th ed. 1991)). Once past this threshold challenge, the burden is determined by applicable nonbankruptcy law. Raleigh v. Illinois Dep't of Revenue, 530 U.S. 15, 21, 120 S.Ct. 1951, 1955, 147 L.Ed. 2d 13(2000).

---

[11] Pursuant to the PMF Settlement, the settlement proceeds were paid to PMF's Chapter 7 estate. KPB, on the other hand, is essentially a no asset case. Nevertheless, as a result of the substantive consolidation of PMF and KPB, the assets and liabilities of the two entities have been combined and the liabilities are to be satisfied from the common pool of assets. Eastgroup Properties v. Southern Motel Assoc. Ltd., 935 F.2d 245, 248 (11th Cir. 1991). Accordingly, even though SouthCrest has no privity of contract with PMF, it now has a claim against the common pool of assets.

[12] Even though both debtors objected to SouthCrest's claim, the cases have proceeded under the heading of PMF's case after substantive consolidation. Accordingly, the claim objection will be treated as the objection of PMF. However, because the grounds for the objections are identical, this decision will constitute a decision on the merits of the objection filed in each case.

In re LJL Truck Center, Inc., 299 B.R. 663, 666 (Bankr. M.D. Ga. 2003). In this case, PMF does not challenge execution of the note by KPB. Further, PMF acknowledges that, when these chapter 7 cases were filed, SouthCrest was the holder of the note. Accordingly, the burden is on PMF to establish a defense. O.C.G.A. § 11-3-308.

The Settlement Contracts.

A settlement agreement is a contract and is subject to the usual rules of statutory construction. LNV Corp. v. Studle, 322 Ga.App. 19, 20, 743 S.E. 2d 578, 580 (2013). Under Georgia law, "The construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1.

> It is axiomatic that contracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole. Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning.

First Data POS, Inc. v. Willis, 273 Ga. 792, 794, 546 S.E.2d 781, 784 (2001). However, "...if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity." CareAmerica, Inc. v. Southern Care Corp., 299 Ga. App. 878, 880, 494 S.E.2d 720, 722 (1997). "Ambiguity in a contract is defined as duplicity, indistinctness or an uncertainty of meaning or expression." Horwitz v. Weil, 275 Ga. 467, 468, 569 S.E. 2d 515, 516 (2002). As explained by the court in General Steel, Inc. v. Delta Building Systems, Inc., 297 Ga.App. 136, 138, 676 S.E.2d 451, 453-54 (2009):

> Ambiguity exists where the words used in the contract leave the intent of the parties in question-i.e., that intent is uncertain, unclear or is open to various interpretations. Conversely, no ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation.

Paragraph 9 of the SouthCrest Settlement is clearly ambiguous. By combining the phrase "satisfaction of SouthCrest's claim pursuant to the mortgagee clause" with the phrase "including, but not limited to, the mortgage debt", there is a question as to whether the parties settled only SouthCrest's claim against Catawba under the insurance contract, or whether they also settled the mortgage debt itself, i.e. SouthCrest's claim against KPB. The meaning of Paragraph 9 becomes clear, however, upon considering "...the background of the contract and the circumstances under which it was entered into, particularly the purpose for the particular language to be construed". Hortman v. Childress, 162 Ga. App. 536, 537, 292 S.E.2d 200, 202 (1982).

The "mortgagee clause" referenced in the SouthCrest Settlement is found in Section F.2 of the insurance contract. That section provides:

> Mortgage Holders
>
> a. The term "mortgage holder" includes trustee.
> b. We will pay for <u>covered loss of or damage to buildings or structures</u> to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.
> c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

(Emphasis supplied). Thus, SouthCrest's "claim pursuant to the mortgagee clause" was for only "covered loss of or damage to buildings or structures". SouthCrest had no claim

against Catawba under the mortgagee clause to recover its mortgage claim against KPB. Therefore, it is clear that SouthCrest's claim "pursuant to the mortgagee clause" that was being satisfied did not include SouthCrest's claim against KPB. The reference in Paragraph 9 to the mortgage debt could only have been included to recognize that this demand had been made in SouthCrest's complaint.

PMF contends that SouthCrest did have a claim against Catawba for the mortgage debt pursuant to Section F.2.e. of the insurance contract. Section F.2.e. provides:

> If we pay the mortgage holder for any loss or damage <u>and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:</u>
> (1) The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and
> (2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.
> <u>At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.</u>

(Emphasis supplied). Clearly, SouthCrest could not make a demand under Section F.2.e that Catawba pay the mortgage debt and take an assignment thereof. Rather, payment of the mortgage debt was an "option" available to Catawba, which could be exercised by Catawba only if it denied payment to PMF because of PMF's acts or because PMF failed to comply with the terms of the insurance contract. However, the facts establish that Catawba refused to pay PMF the mortgage debt because it was not a covered loss and because PMF was not obligated on the debt, not because of PMF's acts or failure to comply with the insurance contract.

PMF argues that before Wangerin completed negotiations with Catawba on the

PMF settlement, he called Richard Tisinger, the attorney who had represented SouthCrest in the Gwinnett County Suit, to ask Tisinger for clarification about the meaning of Paragraph 9 of the SouthCrest Settlement.  Wangerin testified about this conversation at the claim dispute hearing.  PMF argues that this testimony establishes that Tisinger understood that the mortgage debt was settled and assigned pursuant to Paragraphs 9 and 11.

Parol evidence is admissible to explain ambiguities.  <u>Willesen v. Ernest Communications, Inc.</u>, 323 Ga.App. 457, 464, 746 S.E.2d 755, 761 (2014) <u>cert. denied</u>.  However, Wangerin's testimony was unclear as to whether Tisinger simply affirmed that the SouthCrest Settlement settled SouthCrest's claim against Catawba or whether it also settled (and assigned to Catawba) SouthCrest's claim against KPB.  While Wangerin testified at length about his understanding of the SouthCrest Settlement (which is irrelevant to the issue at hand), when asked, "[N]ow, did you talk with him [Tisinger] specifically about the Release being applicable to PMF, for instance?", his response was:

> Well, you know, <u>I don't think</u> we talked directly about the Gwinnett County Release in terms of its terms.  <u>I think</u> that we discussed that once that Release, when it discussed the mortgage debt and the Deficiency Judgment, that Release was including those items, meaning including the Bank's claim for that $927,000.

(Emphasis supplied).  <u>Trial Transcript, p. 78.</u>

On the other hand, Mike Low, Senior Vice President of SouthCrest Bank, testified that he was personally in charge of the negotiations between SouthCrest and Catawba and was giving Tisinger his instructions with respect thereto.  Low testified that the mortgage debt had been obtained from the FDIC in an asset purchase agreement after Century

failed. He testified that because of SouthCrest's obligations to the FDIC to recover all that it could on the mortgage debt, SouthCrest could not assign the mortgage debt to Catawba and release KPB without the FDIC's consent and that SouthCrest refused to ask the FDIC for its consent. The Court is convinced that Low's clear testimony as to SouthCrest's intent outweighs any vague testimony by Wangerin to the contrary.

Finally, "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." Scruggs v. Purvis, 218 Ga. 40, 42, 126 S.E.2d 208, 209 (1962). PMF argues that, shortly after the SouthCrest Settlement was executed, PMF and Catawba submitted a consolidated pretrial order in the Fulton County Suit in which Catawba asserted, as part of its contentions in the case, that "because of Catawba's settlement with SouthCrest Bank, neither PMF nor KPB have any further obligations to Century Security Bank or SouthCrest Bank." PMF contends that this shows that Catawba understood that the SouthCrest Settlement satisfied the mortgage debt. However, in that same pretrial order, Catawba also stated that it "has agreed to make an additional payment to SouthCrest, as successor to the failed Century Security Bank, in the amount of $150,000, as mortgagee, representing the contents and inventory in the structure." (Emphasis supplied). Thus, Catawba took inconsistent positions in the pretrial order with respect to its understanding of the SouthCrest Settlement.

More revealing, however, is the fact that Catawba did not assert the mortgage debt as a counterclaim in the Fulton County Suit. At the pretrial stage of the Fulton County Suit, before the Fulton County Court ruled that PMF was not liable on the mortgage debt,

PMF was seeking damages from Catawba in an amount equal to the mortgage debt, contending that, because of Catawba's failure to pay the mortgage payments, PMF was now liable on the mortgage debt. Had Catawba believed that it was the holder of the mortgage debt as a result of the SouthCrest Settlement, surely it would have asserted in the pretrial order that the assigned mortgage debt was an offset against that damage claim. Since it did not, this Court concludes that Catawba did not believe that the mortgage debt had been settled and assigned to it by the SouthCrest Settlement.

In summary, this Court concludes that SouthCrest's claim against KPB was not discharged and settled under the SouthCrest Settlement. In light of this conclusion, it is unnecessary for this Court to address PMF's contention that it was a third party beneficiary of the SouthCrest Settlement.

2. Accord and Satisfaction.

PMF contends that the SouthCrest Settlement represents an accord and satisfaction which satisfies the mortgage debt. Under Georgia law:

> Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the later agreement has been executed.

O.C.G.A. § 13-4-101. The mortgage debt is evidenced by the note and security deed from KPB to Century which SouthCrest now holds. The SouthCrest Settlement, on the other hand, is an agreement between SouthCrest and Catawba. The SouthCrest Settlement between SouthCrest and Catawba does not constitute a new agreement between SouthCrest and KPB. Accordingly, no accord and satisfaction has occurred.

3. Judicial Estoppel.

PMF next argues that SouthCrest is judicially estopped from asserting its claim.

> The purpose of judicial estoppel is "to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed. 2d 968 (2001). Specifically, judicial estoppel is designed to "prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous proceeding." 18 Moore's Federal Practice § 134.30 (3d ed. 2008). In New Hampshire v. Maine, the Supreme Court recognized that while the circumstances under which a court might invoke judicial estoppel will vary, three factors typically inform the decision: (1) whether the present position is clearly inconsistent with the earlier position; (2) whether the party succeeded in persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding would create the perception that either the first or second court was mislead and; (3) whether the party advancing the inconsistent position would derive an unfair advantage. Id. at 750-51, 121 S.Ct. at 1815-16.

Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010).

> In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case. Salomon Smith Barney, Inc. v. Harvey, M.D., 260 F.3d 1302, 1308 (11th Cir. 2001). 'First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system.' Id.

Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).

The doctrine of judicial estoppel does not apply in this case. In these consolidated Chapter 7 cases, SouthCrest is contending that the mortgage debt is a valid claim. SouthCrest has not taken an inconsistent position under oath in any prior legal proceeding. The inconsistent position taken by Catawba in the Fulton County Suit and Wangerin's inconsistent understanding of the meaning of the SouthCrest Settlement do not constitute inconsistent positions under oath by SouthCrest.

4.  Promissory Estoppel.

PMF next contends that the doctrine of promissory estoppel prevents SouthCrest from claiming the mortgage debt. Under Georgia law:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

O.C.G.A. § 13-3-44(a). The classic law school example of promissory estoppel is when John promises that he will pay Bob an agreed upon sum if Bob will climb to the top of a flag pole. In reliance upon this promise, Bob begins climbing the pole. Immediately prior to Bob reaching the top, John tries to cancel the promise. Under promissory estoppel, John is estopped from revoking the promise because Bob has reasonably relied on the promise and acted to his detriment.

In this case, SouthCrest made no promise to PMF or KPB. While SouthCrest's counsel did discuss with Wangerin the terms of the SouthCrest Settlement, there is no evidence that SouthCrest's attorney made Wangerin any promise to do anything in return for Wangerin's reliance on those discussions. Since there was no promise made to PMF or KPB, promissory estoppel is not applicable.

5.  Dismissal with Prejudice.

Finally, PMF contends that SouthCrest's dismissal with prejudice of the Gwinnett County Suit operates as an adjudication on the merits for res judicata purposes and bars SouthCrest from asserting the mortgage claim in the bankruptcy cases.

> The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. Res judicata prevents a

plaintiff from instituting a second complaint against a defendant on a claim that has already been brought, after having previously been adjudged not to be entitled to the recovery sought on that claim. Three prerequisites must be satisfied before res judicata applies-(1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction.

Waldroup v. Greene County Hosp. Authority, 265 Ga. 864, 865-66, 463 S.E.2d 5, 6-7 (1995).

SouthCrest's claim in the Gwinnett County Suit was a claim against Catawba on the insurance contract. SouthCrest's claim in these bankruptcy cases is based on SouthCrest's claim on the note from KPB. Accordingly, because the claims in each matter arose from separate contracts, they are not identical causes of action. See Executive Fitness, LLC v. Healey Bldg. Ltd. Partnership, 290 Ga.App., 613, 615, 660 S.E. 2d 26, 29 (2008) (a suit on a lease contract does not represent an identical cause of action as a suit on a note because the claims arise from two separate contracts). Accordingly, SouthCrest's dismissal of the Gwinnett County Suit does not bar its claim on the note from KPB.

## **CONCLUSION**

For the reasons stated above, PMF's objection to the claim of SouthCrest is overruled.[13] An order consistent with this memorandum opinion shall be entered.

*END OF DOCUMENT*

---

[13] Pursuant to footnote 12, this decision shall constitute a decision on the merits of PMF's objection (in case number 10-50309, Docket No. 74) and KPB's objection (in case number 10-50306, Docket No. 66).